UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X

UNITED STATES OF AMERICA,

                                        **OPINION & ORDER**
      -against-                            **CR-04-0949 (SJF)**

EDDIE WRIGHT, a/k/a "PROFIT", and
WANDA ALMONTE, a/k/a "WHIP",

                       Defendants.
----------------------------------------X
FEUERSTEIN, J.

Pending before this Court is a letter motion by defendant Eddie Wright (defendant) seeking, *inter alia*, suppression of certain statements and identification testimony. For the reasons set forth herein, defendant's motion is denied.

II.    DISCUSSION

    A.    Defendant's Statements

        1.    December 10, 2004 Arrest

Defendant challenges his statement to Agent John McKenna (McKenna) following his arrest on December 10, 2004, in which he provided McKenna with a false name. It is undisputed that defendant invoked his right to counsel before providing the challenged statement. Defendant contends that McKenna's questioning of him without counsel and without informing him of his rights under <u>Miranda v. Arizona</u>, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), thus, violated his Sixth Amendment right to counsel.

"The collection of biographical or pedigree information through a law enforcement

1

officer's questions during the non-investigative booking process that typically follows a suspect's arrest * * * does not ordinarily implicate the prophylactic protections of Miranda, which are designed to protect a suspect only during investigative custodial interrogation." Rosa v. McCray, 396 F.3d 210, 221 (2d Cir. 2005), cert. denied 126 S.Ct. 215, 163 L.Ed.2d 201 (2005); see also United States v. Carmona, 873 F.2d 569, 573 (2d Cir. 1989)(holding that obtaining pedigree information does not constitute custodial interrogation subject to the protections of Miranda). That the information gathered while collecting pedigree information turns out to be incriminating in some respect "does not, by itself, alter the general rule that pedigree questioning does not fall under the strictures of Miranda." Rosa, 396 F.3d at 221.

McKenna's inquiry into defendant's name upon his arrest was a routine booking question and was neither intended, nor reasonably likely, to elicit an incriminating response. Accordingly, the challenged post-arrest statement was not obtained in violation of defendant's Miranda rights. Apparently recognizing this, defendant contends that McKenna's pedigree questioning of him nonetheless violated his Sixth Amendment right to counsel. However, defendant's contention is without merit.

McKenna's post-arrest inquiry into defendant's identity was intended only to gather ordinary information from him for administrative purposes. The mere fact that defendant had earlier invoked his right to counsel does not alter the result that information regarding a person's identity and background is not protected by Miranda or Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981)[1]. See, e.g. Carmona, 873 F.2d at 573 (extending the rule that

---

[1] In Edwards, the Supreme Court held that it was inconsistent with Miranda for the police to reinterrogate a suspect in custody when he had clearly asserted his Sixth Amendment right to counsel. 451 U.S. at 485, 101 S.Ct. 1880.

2

solicitation of pedigree information does not amount to custodial interrogation prohibited by Miranda to situations where a defendant invoked his right to counsel and was nonetheless subjected to pedigree questioning); United States v. Ferrara, 990 F.Supp. 146, 154 (E.D.N.Y. 1998)(denying suppression of defendant's statement elicited during pedigree questioning notwithstanding that defendant had earlier asked to contact counsel); United States v. Zhang, No. 94 CR 0021, 1994 WL 406073, at * 5 (S.D.N.Y. Jul. 29, 1994)(denying suppression of the defendant's post-arrest statements made during routine booking questioning notwithstanding the defendant's invocation of her right to counsel); United States v. Brown, 744 F.Supp. 558, 568-569 (S.D.N.Y. 1990)(holding that regardless of whether the defendant invoked his right to counsel prior to any custodial questioning, any background information was not protected by the constitutional requirements of Miranda and Edwards and denying suppression). Accordingly, the branch of defendant's motion which seeks suppression of his post-arrest statement made on December 10, 2004 is denied.

2. July 2, 2003 Arrest

a. Admissibility of Arrest

Defendant initially seeks a ruling *in limine* precluding evidence of the July 2, 2003 arrest for criminal trespass and its surrounding circumstances under Rules 403 and 404(b) of the Federal Rules of Evidence on the basis, *inter alia*, that the charges resulting from that arrest were dismissed, that the arrest is not specifically charged in the indictment and is not an overt act alleged in the indictment and that the prejudicial impact of such evidence outweighs any probative value it may have.

Rule 403 of the Federal Rules of Evidence provides that relevant evidence may be excluded, *inter alia*, "if its probative value is substantially outweighed by the danger of unfair prejudice."

Rule 404(b) of the Federal Rules of Evidence provides, in pertinent part, as follows:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident * * *.

"[E]vidence of uncharged criminal activity is not considered other crimes evidence under Fed. R. Evid. 404(b) if it arose out of the same transaction or series of transactions as the charged offense, if it is inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime on trial." United States v. Avendano, No. 02 CR 1059, 2004 WL 2734435, at * 2 (S.D.N.Y. Nov. 30, 2004)(quoting United States v. Nektalov, 325 F.Supp.2d 367, 370 [S.D.N.Y. 2004]). However, "[w]here it is not manifestly clear that the evidence in question is intrinsic proof of the charged crime, the proper course is to proceed under Rule 404(b)." Id.

Evidence of the July 2, 2003 arrest, which occurred within the time frame of the conspiracy charged in count one of the superceding indictment, is both inextricably intertwined with the evidence regarding the charged conspiracy and necessary to complete the story of that offense. Evidence of the July 2, 2003 arrest is highly probative intrinsic evidence of defendant's involvement in the conspiracy alleged in count one. Moreover, in light of the temporal proximity between the July 2, 2003 arrest and the charged crimes, the arrest may be considered to be direct proof of the crimes charged in the superceding indictment. In addition, the highly probative

4

value of this evidence is not substantially outweighed by any danger of unfair prejudice arising from the admission of such evidence. Thus, Rule 403 does not require exclusion of evidence of the July 2, 2003 arrest.

In any event, even if the July 2, 2003 arrest and its surrounding circumstances is not considered to be intrinsic proof of the conspiracy charged in count one of the superceding indictment, it would still be admissible under Rule 404(b). The Second Circuit has adopted an "inclusionary approach," which allows evidence of other acts to be admitted "for any purpose other than to show a defendant's criminal propensity." United States v. Mitchell, 328 F.3d 77, 82 (2d Cir. 2003)(quoting United States v. Garcia, 291 F.3d 127, 136 [2d Cir. 2002]). Evidence of prior bad acts is admissible if it "is relevant to an issue at trial other than the defendant's character, and if the probative value of the evidence is not substantially outweighed by the risk of unfair prejudice." Garcia, 291 F.3d at 136.

"Where a defendant's intent or knowledge is clearly at issue, evidence of prior acts may be admissible to prove intent or knowledge." United States v. Pitre, 960 F.2d 1112, 1119 (2d Cir. 1992). Moreover, evidence of prior acts "may be admitted to inform the jury of the background of the conspiracy charged, to complete the story of the crimes charged, and to help explain to the jury how the illegal relationship between participants in the crime developed." Id. at 1119.

In order to establish a drug conspiracy pursuant to 21 U.S.C. § 846, the Government must prove the existence of a conspiracy, that the accused knew of the conspiracy, and that he knowingly and voluntarily participated in it. Thus, defendant's intent or knowledge is clearly at issue under the conspiracy charged in the superceding indictment and, therefore, evidence

tending to show such intent or knowledge is proper under Rule 404(b). See, e.g. United States v. Price, 418 F.3d 771, 784 (7th Cir. 2005)(holding that the defendant's prior arrest for drug dealing was admissible under Rule 404[b] insofar as, *inter alia*, it established the defendant's opportunity, plan and knowledge with respect to the conspiracy charged); United States v. Ford, 88 F.3d 1350, 1362 (4th Cir. 1996)(holding that evidence of the defendant's involvement in a prior drug transaction not included in the indictment, but occurring reasonably current with the activity charged in the indictment, was admissible to establish intent, plan, scheme or design). Moreover, the evidence, which pertains to acts occurring during the time of the conspiracy charged, is relevant to, and probative of, defendant's intent and knowledge with respect to the conspiracy. See, e.g. United States v. Ramirez, 63 F.3d 937, 943 (10th Cir. 1995)(holding that evidence that the defendant had previously been arrested for, *inter alia*, possession of cocaine and a large sum of cash, was probative of the defendant's knowledge and intent with respect to the crimes charged, including conspiracy). Since, as previously noted, the probative value of the evidence relating to the July 2, 2003 arrest is not substantially outweighed by the danger of unfair prejudice to defendant if such evidence is admitted, the branch of defendant's motion which seeks exclusion of the facts relating to the July 2, 2003 arrest and its surrounding circumstances is denied.

      b.     Statements Made on July 2, 2003

Defendant contends that the statements he made on July 2, 2003 should be suppressed because they violated his rights under Miranda and his right to counsel. According to defendant, the police continued to question him prior to his arrest even after he offered an innocent

explanation for his presence at the subject premises. In addition, defendant contends that the warrantless search of his bag without his consent or probable cause violated his Fourth Amendment right against unreasonable search and seizure. According to defendant, the cash recovered from that search and any statements made by him thereafter should, therefore, be suppressed. In the alternative, defendant requests a hearing regarding the admissibility of those statements.

i. The Stop

The Supreme Court in <u>Terry v. Ohio</u>, 392 U.S.1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) and its progeny, has recognized that a law enforcement officer's reasonable suspicion that a particular person has committed, is committing, or is about to commit a crime permits that officer to briefly stop the person and take additional steps to investigate the circumstances that provoked that suspicion. See <u>United States v. Brignoni-Ponce</u>, 422 U.S. 873, 881, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975); see also <u>Hayes v. Florida</u>, 470 U.S. 811, 816, 105 S.Ct. 1643, 84 L.Ed.2d 705 (1985)(holding that if there are articuable facts supporting a reasonable suspicion that a person has committed a crime, that person may be stopped in order to identify him, to question him briefly, or to detain him briefly while attempting to obtain additional information). However, the <u>Terry</u> stop must be limited. Thus, an officer's action must be "justified at its inception, and * * * reasonably related in scope to the circumstances which justified the inference in the first place." <u>Hiibel v. Sixth Judicial Dist. Court of Nevada, Humboldt County</u>, 542 U.S. 177, 187, 124 S.Ct. 2451, 159 L.Ed.2d 292 (2004)(quoting <u>United States v. Sharpe</u>, 470 U.S. 675, 682, 105 S.Ct. 1568, 84 L.Ed.2d 605 [1985]).

In order to determine whether a law enforcement officer had reasonable suspicion for a Terry stop, the court must look at the totality of the circumstances of each case to see whether the officer had a "particularized and objective" basis for suspecting legal wrongdoing. United States v. Arvizu, 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002). The process allows officers "to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them * * *." Id.

The totality of circumstances indicates that the officers had reasonable suspicion that defendant was committing at least the crime of trespass, which authorized them to stop him and question him as to his identity and reasons for being in the building. Specifically, the officers were aware of prior drug activity in the building, as a result of which they had the landlord's permission to patrol the building and question trespassers; there were "No Trespassing" signs posted throughout the building; the officers previously arrested five individuals for trespassing earlier in the day who had come to the same apartment as defendant, and had recovered a large sum of cash from at least one individual; based upon their experience and training, the officers believed that the subject apartment was associated with drug trafficking; defendant rang the front door buzzer to gain entry into the building, thus indicating that he did not reside there; and defendant either knocked or rang the doorbell of the subject apartment which was suspected to be associated with drug trafficking. Based upon that reasonable suspicion, the officers were permitted to question defendant as to his identity and his reasons for being in the building. See, e.g. Berkemer v. McCarty. 468 U.S. 420, 439, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984)(holding that an officer may ask a person detained during a Terry stop a moderate number of questions to determine his identity and to try and obtain information confirming or dispelling their suspicions

of criminal activity); United States v. Gordon, No. 95 CR 987, 1996 WL 112205, at * 2 (S.D.N.Y. Mar. 13, 1996), aff'd, 107 F.3d 5 (2d Cir. 1997)(finding that the police officers had reasonable suspicion to stop defendant where, *inter alia*, they had received a tip that narcotics were being sold in the building; they witnessed activity consistent with drug dealing, including a stream of individuals entering the building, remaining inside briefly, and then exiting; they had previously arrested two individuals found to be in possession of cocaine; and there were "no trespassing" signs posted outside the building).

Moreover, as defendant was not in custody at the time he made the statements prior to his arrest, he was not entitled to receive Miranda warnings. See Beckwith v. United States, 425 U.S. 341, 347, 96 S.Ct. 1612, 48 L.Ed.2d 1 (1976); United States v. Mitchell, 966 F.2d 92, 98 (2d Cir. 1992). Accordingly, the branch of defendant's application which seeks suppression of his pre-arrest statements on July 2, 2003 is denied.

ii. The Search

Defendant does not dispute that following his responses to the officers' questioning during the Terry stop, he was arrested for criminal trespass. Thereafter, the bag that defendant was carrying was searched.

A search incident to a lawful arrest is an exception to the warrant requirement of the Fourth Amendment. United States v. Robinson, 414 U.S. 218, 224, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973). The search may be made of both the arrestee's person and of the area within the control of the arrestee. Id., Chimel v. California, 395 U.S. 752, 763, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). Defendant does not contend that the officers lacked probable cause for his arrest. In

any event, his failure to provide the officers with an adequate explanation for his presence in the building-- insofar as he was unable to state in which apartment his alleged friend lived or the "friend's" telephone number-- coupled with the other circumstances present at the time of the stop, provided probable cause for his arrest for criminal trespass. Thus, the fact of defendant's lawful arrest established the authority to search both his person and the area within his control, including the bag he was carrying. Accordingly, the branch of defendant's motion which is for suppression of the cash recovered from the bag is denied.

Moreover, since the search did not constitute an unlawful search and seizure, any statements made by defendant thereafter cannot be said to be "fruits of the poisonous tree" pursuant to <u>Wong Sun v. United States</u>, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). Accordingly, the branch of defendant's application which seeks suppression of his post-arrest statements on July 2, 2003 is denied.

B. The Identification

Defendant contends that any in-court identification of him should be suppressed because at least three witnesses were shown photographic arrays which he contends were unduly suggestive because they portrayed a majority of African American males when he is of mixed ethnic heritage–his father was an African American and his mother is Caucasian-- and appears to be more Hispanic than African-American. In addition, defendant requests a pre-trial hearing on the issue of the suggestiveness of the photographic arrays.

A pretrial photographic identification procedure violates due process if the procedure "was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable

misidentification." Simmons v. United States, 390 U.S. 377, 384, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). "The fairness of a photographic array depends on a number of factors, including the size of the array, the manner of presentation by the officers, and the array's contents." United States v. Concepcion, 983 F.2d 369, 377 (2d Cir. 1992). "If there is nothing inherently prejudicial about the presentation, such as use of a very small number of photographs, * * * or the use of suggestive comments, the principal question is whether the picture of the accused, matching descriptions given by the witness, so stood out from all of the other photographs as to suggest to an identifying witness that [that person] was more likely to be the culprit." Id. (internal quotations and citations omitted); see also Jarrett v. Headley, 802 F.2d 34, 41 (2d Cir. 1986)(accord).

Defendant does not contend, nor could he, that the photographic arrays at issue, which each contain six photographs, involve a small number of photographs. See, e.g. United States v. Bennett, 409 F.2d 888, 898 (2d Cir. 1969)(holding that a six photo array was not impermissibly suggestive). In addition, defendant does not contend that any suggestive comments were made during the photographic identification procedures. Accordingly, the sole issue is whether defendant's picture "so stood out from all of the other photographs" in the arrays as to render them unduly suggestive. Defendant's contention regarding the photographic array essentially amounts to a challenge to the skin tones of the other men depicted in the photographs.

The photographic array dated January 20, 2004 contains six photographs, all the same size, depicting African-American males. Two of the photos appear to depict males with light skin tone, two appear to depict males with medium skin tone, and two appear to depict males with dark skin tone. However, there is no requirement that all of the photographs in an array be

11

uniform with respect to a given characteristic. Jarrett, 802 F.2d at 41; see also United States v. Padilla, No. 94 CR 313, 1994 WL 681812, at * 6 (S.D.N.Y. Dec. 5, 1994)(holding that even if there are some physical differences, a photo array will not be suggestive so long as the other pictures sufficiently resembled the defendant to allay any concern that the witnesses might have been unfairly influenced in their selection of him by any of the noted physical differences between him and the others). Moreover, the variations in skin tone may be the product of different photographic or image quality, since the clarity and color quality of the images varies somewhat within the array. Furthermore, all of the males appear to be about the same age and to have close-cropped or short head hair and similar patterns and amounts of facial hair. It does not appear that defendant's photo so stood out from all of the other photographs in this array so as to be suggestive to the identifying witness. See, e.g. United States v. Adeniyi, No. 03 CR 0086, 2003 WL 21146621, at * 2 (S.D.N.Y. May 14, 2003)(holding that the six-photo photographic array was not unduly suggestive, notwithstanding that the defendant's skin tone appeared slightly different from that of at least four of the other men in the array); Padilla, 1994 WL 681812, at * 7 (finding that the photo array depicting three light-skinned individuals, two medium-toned individuals, and one very dark-skinned individual was not impermissibly suggestive because the differences between the individuals in the array and the defendant were insufficient to cause the defendant to stand out). Cf. United States v. Fernandez, 456 F.2d 638, 641-642 (2d Cir. 1972) (finding a photographic array to be impermissibly suggestive when the defendant was the only black male with a light skin tone, but noting that if the array had been included with another five-photo array that included one other light-skinned black male with the same hair style, the resulting eleven-photo array that included two men fitting the witness's description would not

have been improperly suggestive). Accordingly this photographic array is not unduly suggestive.

The photographic array dated August 17, 2004 contains six photographs, all the same size, of African-American males with light to medium skin tone, with no or little head hair and similar patterns and amounts of facial hair. It does not appear that defendant's photo so stood out from all of the other photographs in this array so as to suggest to the identifying witness that he was the culprit. Accordingly, the contents of this array are not unduly suggestive. See, e.g. United States v. Dames, 380 F.Supp.2d 270, 277 (S.D.N.Y. 2005)(finding that the photo array was not unduly suggestive where the photographs were of the same size and portrayed males with medium to dark skin, with little or no head hair, and similar patterns and amounts of facial hair). Therefore, the branch of defendant's motion which seeks suppression of any identification testimony is denied.

Moreover, absent any showing that a suggestive identification procedure was used, the court is within its discretion to deny a pretrial hearing pursuant to United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). See Dames, 380 F.Supp.2d at 275. As defendant has failed to show that the photographic arrays were suggestive, the branch of his application which seeks a Wade hearing is denied.

III. CONCLUSION

Defendant's motion is denied in its entirety.

SO ORDERED.

SANDRA J. FEUERSTEIN
United States District Judge

Dated: February 13, 2006

13

Copies to:

LoTurco & Martin
434 New York Avenue
Huntington, New York 11743

United States Attorney's Office
Eastern District of New York
610 Federal Plaza
Central Islip, New York 11722-4454
Attn: Bonnie S. Klapper